IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

KAREN MILLER,

       Plaintiff,

v.                            CASE NO. 2:07-cv-0613

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Karen Miller (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on September 14, 2004, alleging disability as of March 31, 1999, due to diabetes, high blood pressure, depression, panic attacks, thyroid problems, supraventricular tachycardia ("SVT")(a heart condition), and problems handling stress.  (Tr. at 14, 79-82, 104-105, 350-353, 355.)  The claims were denied initially and upon reconsideration.

(Tr. at 14, 61-63, 361-363.)  On July 11, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 64.) Hearings were held on February 23, 2006 and April 27, 2006, before the Honorable James R. Toschi.  (Tr. at 21, 25, 29-33, 34-51.)  By decision dated June 9, 2006, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 14-20.)  The ALJ's decision became the final decision of the Commissioner on August 9, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.)  On October 3, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is

whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574

3

(4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of type 2 diabetes with multiple ketoacidosis episodes in the past and obesity. (Tr. at 16-17.) The ALJ found that all other impairments alleged were nonsevere because they did not exist for continuous period of twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertion or nonexertional functional limitations (20 C.F.R. 404.1509 and 416.909 and Social Security Ruling ("SSR") 85-28). (Tr. at 17.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 17-18.) As a result, Claimant can return to her past relevant work as a car salesperson. (Tr. at 19.) On this basis, benefits were denied. (Tr. at 19-20.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

4

defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 47 years old at the time of the administrative hearing. (Tr. at 37.) Claimant has a high school education and completed one year of college. (Tr. at 38.) In the past, she worked as a car salesperson for "twenty-plus" years. (Tr. at 40.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On August 2, 1996, Claimant sought treatment at an emergency room ("ER") for "poorly controlled diabetes and abdominal pain" and released within three hours.  (Tr. at 173)

On May 11, 1999, Claimant sought treatment at an ER and was admitted to the hospital with complaints of generalized weakness and nausea, which Claimant described as "similar to previous episodes of diabetic ketoacidosis that she'd experienced before." (Tr. at 176.)  In describing her history of her present illness to hospital staff, Claimant stated she "purchased Humulin R for herself which she regulated by taking Accu-Chek readings daily." (Tr. at 176.)  Claimant remained hospitalized until her discharge on May 14, 1999 with the final diagnosis of

1. Type I diabetes mellitus with diabetic ketoacidosis.
2. Alcohol abuse.
3. Tobacco abuse.
4. Vaginal Candidiases.
5. Nausea and vomiting.

(Tr. at 176.)  Claimant's hospital course was described as "fairly unremarkable with the exception of some difficulty in getting her sugars to a reasonable level."  (Tr. at 177.)

On May 11, 1999, during her aforementioned hospitalization, Claimant underwent a portable AP chest AP/PA.  The radiology report states:  "The cardiomediastinal silhouette is normal.  The lungs are clear.  No effusions or consolidation.  The bony structions are intact.  Impression:  No active cardiopulmonary disease."  (Tr. at 188.)

6

On November 7, 2000, Claimant underwent a chest two view frontal and lateral due to chest pain.  Christopher A. Schlarb, M.D., reported "[t]wo views of the chest reveal the heart and mediastinal structures to be within normal limits and I see no infiltrates." (Tr. at 329.)  On this same date, Dr. Schlarb also performed a single view of the abdomen due to Claimant's reported epigastric pain.  He found "no air filled and dilated loops of small bowel to suggest the presence of a small bowel obstruction.  There is a rounded calcification within the right pelvis, compatible with a phlebolith.  Impression:  No acute abnormalities." (Tr. at 330.)

On November 28, 2001, Claimant sought treatment at an ER for elevated blood pressure and elevated heart rate.  (Tr. at 191.)  Claimant described to hospital staff "difficult to control multiple previous panic attacks." (Tr. at 192.)  Claimant denied chest pain.  (Tr. at 193.)  The ER physician diagnosed "panic attacks" and prescribed medication (not legible) and estimated her time off from work at two days.  (Tr. at 194.)

On November 28, 2001, during her aforementioned ER visit, Claimant underwent a portable AP chest AP/PA.  The radiology report states: "Indication:  Tachycardia...heart and vascularity are normal." (Tr. at 200.)

On April 14, 2004, Claimant underwent a CT pulmonary angiogram.  Stephen Elksnis, M.D. stated in a report printed to the

ER, "[t]here is no evidence for abnormal enlarged lymph nodes in the mediastinum or hilar regions.   There is no evidence for pulmonary embolus.  Lungs are well aerated." (Tr. at 327.) On that same date, Dr. Elksnis also performed a chest two views examination and determined that "[t]he heart is normal in size.  The lungs are clear.  Pulmonary vascularity is normal.  Impression:  No evidence for acute cardiopulmonary disease." (Tr. at 328.)

On April 15, 2004, Claimant sought treatment at an ER for supraventricular tachycardia (SVT), diabetes type 1, hypothyroidism, and alcohol abuse.  (Tr. at 202.)  Claimant was discharged the next day with aforementioned conditions stabilized. (Tr. at 202.)  Claimant's chief complaint was palpitations and shortness of breath.  (Tr. at 203.)  Upon physical examination, Claimant was found to have "no acute distress."  (Tr. at 203.) Chest x-rays showed no evidence of acute cardiopulmonary disease and a CT angio was negative of pulmonary embolism.  (Tr. at 205, 212-13.)

On May 20, 2004, Claimant underwent a myocardium stress test. John Alan Willis, M.D. examined Claimant and reported "[n]o chest pain was reported and there were no ischemic EKG changes... Normal myocardial perfusion study without evidence of stress induced ischemia or previous infarction.  Normal gated wall motion study and ejection fraction." (Tr. at 325-26.)

On September 8, 2004, Claimant sought treatment at the ER for

"severe disorientation" and a "fall three days ago." (Tr. at 229, 335.) A CT scan of the head revealed "no radiographic evidence for acute intracranial process." (Tr. at 230, 235.) Claimant was discharged with instructions to "[c]ontinue home medications. Add additional salt to her food. She will have an outpatient MRI of the brain." (Tr. at 230.)

On September 14, 2004, Claimant sought treatment at the ER for pain in her right side ribs following a fall in her bathroom. (Tr. at 220.) Claimant was diagnosed with right rib contusions with ninth and tenth nondisplaced fractures of the ribs." (Tr. at 221, 223.) The ER evaluation form described treatment and course as "Uneventful. The patient will be given 2 Tylenol 3s." (Tr. at 221, 223.)

On September 21, 2004, Claimant sought treatment from the Charleston Fire Squad. A patient care record shows the claimant to have a past history of diabetes and hypertension. The record further states Claimant "took insulin last night, woke up disoriented, similar episode last week." (Tr. at 240.)

On November 6, 2004, Lisa C. Tate, a licensed psychologist, provided a psychological evaluation at the request of the West Virginia Disability Determination Service. (Tr. at 241-4.) Ms. Tate stated Claimant's chief complaints were depression, panic attacks, and medical problems. (Tr. at 241.) Ms. Tate's diagnosis:

Axis I:           Depressive Disorder NOS[1]
Axis II:          Anxiety Disorder NOS
Axis III:         No Diagnosis
Axis IV:          By Self-Report:  Diabetes, hypertension,
                  thyroid problems and SVT

(Tr. at 244.)

Ms. Tate noted Claimant's social functioning, persistence, and pace to be within normal limits based on clinical observation and a Digit Span score of 9.  (Tr. at 245.)

On December 10, 2004, Nilima Bhirud, M.D., provided a disability determination evaluation at the request of the West Virginia Disability Determination Service.  (Tr. at 248-54.)  Dr. Bhirud states that Claimant describes a history of diabetes mellitus for nine years, hypertension, high cholesterol, GERD, and an SVT episode in April 2004, which has not reoccurred.  (Tr. at 248.)  Claimant further describes a backache for twenty years for which she has never seen a physician.  (Tr. at 248.)  Claimant describes depression for nine years and a history of panic attacks.  (Tr. at 249.)  Claimant stated that she had never seen a psychiatrist.  (Tr. at 249.)

Dr. Bhirud provided the following assessment:

The claimant is a 46-year old female who gives a history of diabetes.  According to her, her sugar fluctuates a lot.  She has been hospitalized six times for diabetes mellitus.  She complains of having no energy.  She has a history of SVT in April of 2004.  She was given medications to slow down the heart rate.  She said she has not had anymore SVT.  She also gives history of

_____

[1]  "NOS" is an acronym for "not otherwise specified."

10

> shortness of breath for several years.  At the time of
> examination, she had moderately decreased air entry.  She
> has history of smoking one pack per day for 25 years.  As
> far as her back is concerned, she had mild lumbar
> tenderness.  Forward flexion was 90 degrees.

(Tr. at 251.)

On December 28, 2004, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that claimant could perform medium work with an ability to frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and an occasional ability to climb ladder/rope/scaffolds, with no manipulations, visual, or communication limitations, and no environmental limitations, with the exception to avoid concentrated exposure to hazards. (Tr. at 255-63.)  The evaluator, A. Rafael Gomez, M.D., opined that Claimant "is not entirely credible.  Her complaints and restrictions are out of proportion to the medical findings.  Has obesity, diabetes mellitus type 2, and hypertension without any end-organ damage.  Physical examination is WNL [within normal limits].  Reduced to medium work."  (Tr. at 260.)

On January 17, 2005, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe.  The evaluator, Jeff L. Harlow, a licensed psychologist, opined Claimant had mild restriction of activities of daily living and no functional limitations in maintaining social functioning, maintaining concentration, persistence, or pace, and no episodes of decompensation.  (Tr. at

11

264-78.)

On May 5, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that claimant could perform medium work with no postural, manipulative, visual, communicative or environmental limitations. (Tr. at 279-87.)  The evaluator, Rogelio T. Lim, M.D., opined that Claimant had "full use of all limbs without limitations... exam was unremarkable... alleges pain but no pain management and only takes mild analgesics.  The allegations [are] not credible... alleges arrhythmia only one time last April 2004 and not sustaining and not disabling... Full range of motion of all joints and spine." (Tr. at 284.)

On May 7, 2005, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe.  The evaluator, Robert W. Solomon, a licensed psychologist, opined Claimant had no limitations in activities of daily living or maintaining social functioning, and no episodes of decompensation, and mild difficulty in maintaining concentration, persistence or pace. (Tr. at 288-307.)

On April 12, 2005, Claimant underwent a lumbar spine examination at Charleston Area Medical Center, Department of Medical Imaging.  James T. Smith, M.D., determined "[t]he vertebral bodies are in normal alignment.  No bony abnormalities are seen. The intervertebral disc spaces are well maintained.  The pedicles

and other vertebral appendages appear normal.  Impression: Normal lumbar spine." (Tr. at 336.)

On April 12, 2005, Claimant also underwent a right hip and left wrist examination at Charleston Area Medical Center, Department of Medical Imaging.  Jeffrey C. Dameron, M.D., examined Claimant's right hip and found "AP and lateral views of the right hip show no fracture or dislocation." (Tr. at 337.)  Dr. Dameron examined the left wrist and found "[f]our views of the left wrist show no radiographic abnormality of bony architecture or alignment." (Tr. at 338.)

On September 11, 2005, Claimant sought treatment at an emergency room after slipping in her home and hitting her left side on a coffee table.  (Tr. at 331-32.)  Jennifer M. Smith, M.D., performed a chest two view medical imagining examination and concluded: "[t]here is no evidence of active cardiac or pulmonary disease.  Cardiac, mediastinal and bilar contours are within normal limits.  There is no evidence of acute fracture or pneumothorax. Impression:  No active disease in the chest." (Tr. at 333.)  On this same date, Dr. Smith also provided a ribs unilateral left examination.  She concluded that "[t]here is no convincing acute fracture or dislocation." (Tr. at 334.)

The record includes treatment notes and other evidence from West Virginia Health Right, Inc. dated April 7, 2004 through February 2, 2006, referring primarily to Claimant's complaints of

diabetes, depression, hypothyroid, GERD, and tobacco abuse. (Tr. at 308-24, 339-40.)

A West Virginia Health Right, Inc. office note dated June 23, 2005, states that Claimant reported a history of panic attacks, dizziness, constant diarrhea, smoking a pack a day, and having three drinks per day. (Tr. at 316.) Another office note dated June 23, 2005, states that Claimant reported stopping taking Zoloft after one month because it made her too sleepy. (Tr. at 312.) The treating nurse practitioner referred Claimant to L. Park, M.D., for an evaluation of depression, and prescribed Lexapro. (Tr. at 312.)

On August 1, 2005, Dr. Park of West Virginia Health Right, Inc., diagnosed Claimant with depressive symptoms. (Tr. at 309.) On September 26, 2005, notes from Dr. Park indicate that Claimant "reports an improvement of her depression" and regarding "psychotherapy... patient reluctant at this time but agrees to think about it." (Tr. at 340.)

On February 6, 2006, Claimant was referred by her attorney for a psychological evaluation with Mareda L. Reynolds, M.A., a licensed psychologist. (Tr. at 341-49.) Ms. Reynolds states that the Claimant "reported a history of depression" and "three episodes of anxiety, the last of which occurred in 2001." (Tr. at 342.)

Ms. Reynolds' diagnosis:

Axis I:         Major Depressive Disorder, Recurrent, Moderate; Anxiety Disorder NOS; Cocaine Dependence in remission
Axis II:        No Diagnosis

14

      Axis III:      By Report: Diabetes, hypothyroidism,  SVT,
                        GERD, hypertension, pain in feet

(Tr. at 346.)

Ms. Reynolds obtained psychological testing on Claimant and concluded she had a score of 33 on the Beck Depression Inventory (BDI), which is the severe range.  On the Beck Anxiety Inventory (BAI), claimant obtained a score of 24, which is in the moderate range.  (Tr. at 345.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to find Claimant's depression and anxiety to be severe impairments; (2) the ALJ failed to give proper weight to the opinion of Ms. Reynolds, a consultative psychologist; and (3) the ALJ did not comply with SSR 96-7p and 20 C.F.R. § 404.1529 in evaluating Claimant's subjective complaints.  (Pl.'s Br. at  3-15.)

The Commissioner counters that substantial evidence supports the ALJ's decision on the grounds that (1) the ALJ correctly evaluated Claimant's physical and mental impairments in accordance with the regulations; (2) the ALJ properly considered the opinion of Ms. Reynolds, a consultive psychologist; and (3) the ALJ properly considered Claimant's subjective complaints and credibility.  (Def.'s Br. at  9-17.)

<u>Evaluation of Claimant's Psychological Impairments</u>

Claimant first takes issue with the ALJ's findings that

Claimant's psychological impairments are not severe.  (Pl.'s Br. at 4-8.)  Claimant alleges that she was treated by "Dr. Park, presumably a psychiatrist." (Pl.'s Br. at 5.)   The court acknowledges that records from West Virginia Health Right, Inc., have been provided bearing signatures that appear to be "L. Park, M.D."  (Tr. at 308, 309, 311, 340.)   However, there is no verification from any source regarding a psychiatry specialty for this physician.[2]  It is noted that Claimant testified that she had "psychological visits" with Dr. Park at West Virginia Health Right and was prescribed Lexapro.  (Tr. at 46.)

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments.  20 C.F.R. § 416.920a (a) (2006); 20 C.F.R. § 404.1520a (a) (2006). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a.  Id.  First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment.  §§ 404.1520a(b)(1) and 416.920a(b)(1) (2006).  Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that

---

[2] West Virginia Health Right, Inc. and the West Virginia Board of Medicine were contacted on February 3, 2009 by a law clerk.  Neither had a record of L. Park, M.D., either as a physician or a physician with a psychiatry specialty.

substantiate the presence of the impairment(s). §§ 404.1520a(b)(1)
and (e), 416.920a(b)(1) and (e) (2006). Third, the ALJ then must
rate the degree of functional limitation resulting from the
impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2006).
Functional limitation is rated with respect to four broad areas
(activities of daily living, social functioning, concentration,
persistence or pace, and episodes of decompensation). §§
404.1520a(c)(3) and 416.920a(c)(3) (2006). The first three areas
are rated on a five-point scale: None, mild, moderate, marked, and
extreme. The fourth area is rated on a four-point scale: None, one
or two, three, four or more. §§ 404.1520a(c)(4) and
416.920a(c)(4)(2006). A rating of "none" or "mild" in the first
three areas, and a rating of "none" in the fourth area will
generally lead to a conclusion that the mental impairment is not
"severe," unless the evidence indicates otherwise. §§
404.1520a(d)(1) and 416.920a(d)(1) (2006). Fourth, if a mental
impairment is "severe," the ALJ will determine if it meets or is
equivalent in severity to a mental disorder listed in Appendix 1.
§§ 404.1520a(d)(2) and 416.920a(d)(2) (2006). Fifth, if a mental
impairment is "severe" but does not meet the criteria in the
Listings, the ALJ will assess the claimant's residual functional
capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2006). The ALJ
incorporates the findings derived from the analysis in the ALJ's
decision:

The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2006).

In this case, the Claimant argues that the ALJ erred in finding that her mental impairments were non-severe. (Pl.'s Br. at 4-8.) Claimant identifies these impairments as "depression and anxiety" (Pl.'s Br. at 4.) Contrary to Claimant's assertions, the court finds that the ALJ's decision reflects appropriate use of the applicable "special technique," *supra*, to evaluate her alleged mental impairments. (Tr. at 17.) In making his severity determination, the ALJ expressly considered the significant history, including examination and laboratory findings, and Claimant's functional limitations, as required by the regulations. Id. Furthermore, the ALJ's decision complies with the regulations in that it articulates a specific finding as to the degree of limitation in each of the functional areas:

The medical evidence of record reflects that the claimant has medical signs and objective findings establishing diagnoses of type 2 diabetes with multiple ketoacidosis episodes in the past and obesity (Ex. 2F, 4F, 8F, 13F). These impairments and their symptoms limit the claimant's ability to perform the demands of basic work activities, including standing, walking, lifting, and carrying. Therefore, I find that these impairments are severe. I find that all other impairments alleged and found in the record are nonsevere because they did not exist for a continuous period of twelve months, were responsive to medication, did not require any significant medical

18

treatment, or did not result in any continuous exertional or nonexertional functional limitations (20 CFR 404.1509 and 416.909 and Social Security Ruling 85-28). The claimant alleges a long history of depression and anxiety/panic attacks, with current symptoms of excessive sleeping, loss of energy and concentration, and social withdrawal. The claimant also has a history of daily alcohol consumption over a 20-year period, without memory blackouts or alcohol withdrawal symptoms. She reports that she continues to drink in moderation, but has not used drugs since the 1980's (Ex. 7). Although the medical evidence establishes that Ms. Miller has exhibited signs and symptoms listed in paragraph "A" of listings 12.04, 12.06 and 12.09, the undersigned concurs with the State agency psychological consultant that her mental impairments are non-severe, as they result in no more than mild functional limitations under paragraph "B" of the mental listings (Ex. 10F). In particular, I concur that the claimant has mild restriction of activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence or pace; and has had no episodes of decompensation, each of extended duration. Furthermore, the evidence does not establish the presence of the "C" criteria of listings 12.04 and 12.06. There were no objective clinical findings made upon psychological assessment done in November 2004 (Ex. 7F) and only mild abnormalities were found upon evaluation in February 2006 (Ex. 16F). The claimant has not been treated by a psychiatrist and has not been psychiatrically hospitalized. Her family physician, who prescribes medication for depression, reported in August 2005 that she saw some improvement in mood with Lexapro (Ex. 13F/1). I find that the medical source of Mareda Reynolds, a licensed psychologist who evaluated the claimant in February 2006, is exaggerated in light of the clinical findings noted in her report. Because her opinion is not supported, it is entitled to little evidentiary weight (Ex. 16F)(SSR 96-5p).

(Tr. at 17.)

The ALJ carefully evaluated the evidence in reaching his conclusion that Claimant's depression and anxiety symptoms did not meet the "severe" criteria because the objective evidence failed to

establish they existed for a continuous period of twelve months, were responsive to medication, did not require any significant medical treatment, and did not result in any continuous exertional or nonexertional functional limitations.

Accordingly, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's finding that Claimant did not have a severe mental impairment.

Opinion of Consultative Psychologist / Weighing Medical Opinions

Claimant next takes issue with the ALJ's assessment of the opinion of Mareda L. Reynolds, a licensed psychologist who performed an evaluation of Claimant on February 2, 2006. (Tr. at 341-49.)  Claimant asserts that the ALJ did not give proper weight to Ms. Reynolds' clinical findings. (Pl.'s Br. at 8-11.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

Under § 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Section 416.927(d)(2) provides that more

weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 416.927(d)(2)(i) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Sections 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

In this case, Claimant disputes the ALJ's finding that Ms. Reynolds, the consulting psychologist, "only found mild abnormalities."  (Pl.'s Br. at 10-11; Tr. at 17.) The ALJ articulated the following reasons for rejecting Ms. Reynolds' opinion regarding Claimant's functional limitations:

> I find that the medical source of Mareda Reynolds, a licensed psychologist who evaluated the claimant in February 2006, is exaggerated in light of the clinical findings noted in her report.  Because her opinion is not supported, it is entitled to little evidentiary weight (Ex. 16F)(SSR 96-5p).

(Tr. at 17.)

The ALJ's rationale comports with the applicable case law and regulations, discussed above.  Ms. Reynolds was a one-time

examiner, not a treating source.  However, even assuming arguendo Ms. Reynolds was considered a treating source, her opinion would not warrant controlling weight because it is not consistent with other substantial evidence which demonstrates Claimant's claims of depression and anxiety were not severe in accordance with 20 CFR 404.1509 and 416.909 and Social Security Ruling 85-28. Accordingly, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's weighing of Ms. Reynolds' opinion.

Credibility Determination

Claimant also argues that the ALJ failed to comply with SSR 96-7p and 20 C.F.R. §§ 404.1529 and 416.929, in evaluating her subjective complaints.  (Pl.'s Br. at  11-14.)  The undersigned interprets this argument as one which disputes the ALJ's determination of Claimant's credibility.

Social Security Ruling 96-7p clarifies when the evaluation of symptoms, including pain, under 20 C.F.R. §§ 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements.  The Ruling further directs that factors in evaluating the credibility of an

22

individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to:

- The medical signs and laboratory findings;

- Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

- Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and limiting factors of Claimant's symptoms, precipitating and aggravating factors, Claimant's medication and side effects, and treatment other than medication. (Tr. at 18-19.) The ALJ explained his reasons for finding Claimant not entirely credible, including the objective findings, the conservative nature of Claimant's treatment, the lack of prescription medication, and her self-reported daily activities. (Tr. at 18-19.)

23

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be extend to produce the alleged symptoms.   Her statements concerning the intensity, duration and limiting effects of these symptoms are credible to some extent.   However, the evidence does not reflect that her impairments result in limitations that would preclude <u>all</u> work.

The claimant was last treated for diabetic ketoacidosis in May 1999.  She was not under the care of a physician at the time and was monitoring her blood sugars each day by herself, taking various doses of Humilin-R based on her Accu-check readings (Ex. 2F).  She was treated in the emergency room on November 28, 2001 for elevated blood pressure and heart rate secondary to panic attack. Laboratory studies and chest x-rays ruled out cardiac abnormality and origin (Ex. 3F).

The claimant was seen in the emergency room and admitted to the hospital on April 15, 2004 for an episode of supraventricular tachycardia, having complaints of extreme shortness of breath, exertional dyspnea, peripheral edema, and palpitations.  She denied chest pain.  Cardiac studies again revealed no evidence of acute cardiopulmonary disease or LV dysfunction.  After administration of Metaprotol, her symptoms dissipated and she was discharged in stable condition on April 16, 2004. In May 2004, a myocardial perfusion scan showed no evidence of stress induced ischemia or previous infarction. The study also showed normal gated wall motion and ejection fraction (Ex. 4F, 13F).  During an examination in the ER in September 2004 for rib fractures, her cardiovascular status was within normal limits and no problems related to diabetic control were indicated (Ex. 5F).

The claimant was examined on a consultative basis for the West Virginia Disability Determination Services on December 10, 2004.  Although she voiced multiple complaints, including shortness of breath, back pain with prolonged standing and walking, chronic diarrhea, epigastric/stomach discomfort secondary to reflux, fatigue, numbness in both hands, and rib pain, physical examination yielded minimal objective cardiovascular, musculoskeletal, respiratory, or abdominal findings. The most notable signs were mild lumbar tenderness and moderately decreased air entry (Ex. 8F).

24

Records from the claimant's treating source dated April 2004 through August 2005 further reflect that her diabetes remains under control (Ex. 13F).

As noted by the DDS medical consultant, the evidence reflects that the claimant has full use of her upper and lower extremities and does not require the use of assistive devices for ambulation. She alleges pain, but is not under pain management, treating her pain with only mild analgesics. There is no evidence of end organ damage related to diabetes and no significant visual disturbances. She alleges shortness of breath and arrhythmia, but has not required treatment for any episodes since April 2004 (Ex. 11F).

The claimant's subjective complaints are not only inconsistent with the objective findings and medical history, but are inconsistent with her activities of daily living. She reports that she takes care of her own personal needs, does household chores, shops, cooks, watches television, and does laundry independently (Ex. 7F/5).

(Tr. at 18-19.)

In his decision, the ALJ considered the evidence of record related to Claimant's impairments and concluded that she retained the functional capacity to perform light work. (Tr. at 19.) He reasoned that Claimant's daily activities are inconsistent with the objective findings and medical history. (Tr. at 19.)

With respect to Claimant's argument that the ALJ wrongfully discredited Claimant's subjective complaints and the opinions of her treating and examining physicians, the court proposes that the presiding District Judge find that the ALJ properly weighed Claimant's subjective complaints and properly assessed Claimant's credibility, in keeping with the applicable regulations, case law, and social security ruling ("SSR") and that his findings are

25

supported by substantial evidence.   20 C.F.R. § 404.1529(b) and 416.929(b) (2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.   Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.   <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th

Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

    <u>February 5, 2009</u>
     Date

                                   Mary E. Stanley
                                   United States Magistrate Judge